(Reap. Dec. 8218)

PACIFIC CUSTOMS BROKERAGE CO. FOR MUNISING WOOD PRODUCTS CO., INC. *v.* UNITED STATES

Entry No. P 230.

(Decided April 24, 1953)

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard E. FitzGibbon* and *Samuel D. Spector*, special attorneys), for the defendant.

LAWRENCE, Judge: Plaintiff has appealed from the appraisement by the United States appraiser, pursuant to the provisions in section 501 of the Tariff Act of 1930 (19 U. S. C. §1501), as amended, of an importation from Canada of machinery and parts for use in the manufacture of spring clothespins. The merchandise presently before the court is one of six importations comprising a complete "group unit" of said machinery. With regard to the other five importations, appraisement has been withheld pending a decision in the instant case.

Appraisement was made on the basis of statutory cost of production, as defined in section 402 (f) of said act (19 U. S. C. § 1402 (f)), and it is conceded by plaintiff that such is the proper basis of appraisement.

As stated in the brief of defendant—

All of the items of cost of production as set forth in Section 402 (f) of the Tariff Act of 1930 are conceded except the sums of $20,000 and $30,000. The Government contends that these two items in dispute are proper items and should be considered as part of the costs to be added in order to arrive at the correct dutiable value of the merchandise as appraised.

Hence, the issue before the court for determination narrows down to the question whether a license fee of $20,000 and royalties in the amount of $30,000 should properly be included as factors in the cost of production of the group unit of machinery of which the present importation is a part.

For convenience, the provisions of section 402 (f) of the tariff act, *supra*, are here set forth:

SEC. 402. VALUE.

\*     \*     \*     \*     \*     \*     \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

In determining the cost of production, pursuant to said section 402 (f), the appraiser added to the entered value of the group unit (a) an item of $20,000 which the importer claims to be a license fee for the exclusive use in the United States, its territories, and possessions, of the patent rights covering the machinery and (b) an item of $30,000 claimed to represent royalties, payment of said sum to be made in monthly installments based upon the number of spring clothespins sold during the preceding month.

The case was submitted for decision upon a stipulation setting forth the salient facts which are not in dispute and, in view of certain concessions of counsel, it becomes unnecessary to set forth in full the agreed statement of facts contained in the stipulation, to which are attached a contract (exhibit 1), outlining the conditions of manufacture and sale of the machinery, and an affidavit (exhibit 2) of Joseph F. Robineau, president of the Munising Wood Products Co., Inc., with reference to exhibit 1.

It is deemed sufficient to refer to the following material evidence of record:

The imported machinery was produced by the St. Lawrence Metal & Marine Works, a concern doing business in Canada, upon order from Herve Baribeau, the owner of patents covered by United States letters patent on said machinery.

It appears that Baribeau is a manufacturer in Canada of spring clothespins but has no facilities for manufacturing machinery like that in controversy. In this case, he furnished to the St. Lawrence Metal & Marine Works, without charge, certain patterns for use in connection with the manufacture of the machinery. The original cost of the patterns to Baribeau was $300, Canadian currency, and it is conceded by the importer that the cost of said patterns should properly be added to the entered value as part of the cost of production. The St. Lawrence company charged Baribeau $10,000, Canadian currency (packing costs not included), for said machinery, which sum represented that company's manufacturing costs, its usual general expenses (not less than 10 per centum of said costs), and its profit (not less than

8 per centum of total expenses). Baribeau, in turn, sold the machinery to Munising Wood Products Co., Inc., the importer, for $10,000, United States currency (packing costs not included), and, since the Canadian and United States dollars were at par at that time, the merchandise was sold to Munising at the cost to Baribeau.

During the period of time consumed in the manufacture and sale of the merchandise in controversy, the St. Lawrence company was the only manufacturer in Canada of machinery of this kind which was manufactured only for and on order from Baribeau who at that time was the only seller of such machinery in Canada.

It is disclosed by exhibit 1 (paragraph 14), attached to the agreed statement of facts, that Munising was obligated to pay Baribeau the sum of $20,000 15 days after the arrival of the machinery in the United States as a license fee; the further sum of $30,000 as royalties on the sale of clothespins produced by the machinery, payable in monthly installments over a period of approximately 6 years; that both sums constituted payments to Baribeau by Munising in consideration for Baribeau, as licensor, granting to Munising, as licensee, the exclusive right in the United States, its territories, and possessions, to import said machinery, and to produce and sell spring clothespins made therewith. Munising was further granted an option to extend these exclusive rights for the period of 5 years on payment of specified additional royalties.

In support of its contention that neither the license fee of $20,000 nor the royalties of $30,000 enter into the statutory cost of production of the group unit of machinery, plaintiff invites our attention to the cases of *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 39 C. C. P. A. (Customs) 86, C. A. D. 468, *United States* v. *Tide Water Oil Co.*, 19 C. C. P. A. (Customs) 392, T. D. 45554, and *United States* v. *F. B. Vandegrift & Co. et al., Kimble Glass Co.*, 26 C. C. P. A. (Customs) 360, C. A. D. 42.

An examination of the opinion in the *Hensel* case, *supra*, discloses that it was predicated upon the following basic facts:

Certain imported printing presses were appraised on the basis of cost of production pursuant to section 402 (f), *supra*; they were covered by letters patent granted by the United States and owned by the foreign vendor; the machines were manufactured in Germany on orders from the foreign vendor, who obtained them by shipment from the manufacturer for transshipment to the importer in that case; the machines were appraised at the purchase price shown on the consular invoice, plus cost of packing. Furthermore, it appeared that the invoice price included a license fee which was paid by the importer in return for certain exclusive territorial rights in the United States. In sustaining the judgment appealed from, the court concluded that the license fee there in controversy was "not an element which may be

properly added in computing the dutiable value of the merchandise on the basis of cost of production." Citing *United States* v. *F. B. Vandegrift Co. et al., Kimble Glass Co.*, 26 C. C. P. A. (Customs) 360, C. A. D. 42, and *United States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, C. A. D. 305.

The factual situation in the *Hensel* case, *supra*, is substantially like that in the case at bar, so far as it relates to the license fee, and is controlling on that phase of the case. By analogical reasoning, there is no apparent reason why the *Hensel* case, in principle, should not also control the determination of the instant case with respect to the inclusion of royalties. Cf. *United States* v. *Tide Water Oil Co.*, 19 C. C. P. A. (Customs) 392, T. D. 45554. While the amount of the license fee and royalties inures to the financial benefit of Baribeau, it does not in any proper sense become a part of the cost of production.

The cost of production formula contained in section 402 (f), *supra*, does not, in view of the undisputed facts of record, expressly or by implication, suggest any reason for including in the cost of production of the subject merchandise either the license fee or the royalties.

Defendant relies upon the case of *Lionel Trading Co., Inc.* v. *United States*, 24 C. C. P. A. (Customs) 432, T. D. 48900, to support the valuation found by the appraiser. An examination of that case discloses that where certain paper boxes and glass bottles were made by subcontractors for the exclusive use of the exporting concern, the exporter, who furnished the designs for the making of the merchandise and also the moulds for making the bottles, was held to be the manufacturer or the producer within the meaning of said section 402 (f), and, accordingly, that a part of the cost of producing the bottles was "in the making, producing, and furnishing the designs and moulds" owned by the exporter. In that case, it was held also that since the exporter was the actual manufacturer in contemplation of law, it was proper to add an item of 28 per centum to cover overhead and profit actually incurred by the exporter in connection with the production of the merchandise in that case. In the case at bar, the license fee and royalties are the fruits of territorial rights in the United States and from the production of goods by the use of the imported machinery. Therefore, the obvious distinction between the *Lionel* case and the present one lies in the fact that here we are dealing with license fees and royalties which have nothing whatsoever to do with the cost of production formula which did apply to the item of overhead and profit to the exporter in the *Lionel* case.

It is also contended by defendant that Baribeau and not the St. Lawrence Metal & Marine Works was the real manufacturer. In view of the undisputed facts in this case, the court is of the opinion that the St. Lawrence company is the manufacturer or producer within the meaning of section 402 (f).

552

All of the cases cited by counsel herein have been examined, but it is found unnecessary to analyze them here for the reason that it is believed that the case before the court is controlled by the decision in the *Hensel* case, *supra*.

Accordingly, I find as facts:

(1) That the importation in controversy consists of machines and parts imported from Canada for use in this country in the manufacture of spring clothespins.

(2) Said machines constitute parts of a "group unit," purchased under an agreement dated November 28, 1947, by Munising Wood Products Co., Inc., of Chicago, Ill., the importer herein, from Herve Baribeau of Levis, Quebec, Canada, the owner of patent rights, covered by United States letters patent.

(3) That the agreed purchase price of said "group unit" of machinery was $10,000, United States currency, exclusive of packing costs.

(4) That in addition to the purchase price, the buyer agreed to pay to the seller the further sums of $20,000 as a license fee, and $30,000, payable over a period of approximately 6 years, as royalties.

(5) That the said sums of $20,000 and $30,000 did not constitute a part of the purchase price of the machinery but were payments in consideration for the seller, as patentee, granting to the buyer the exclusive right in the United States, its territories, and possessions, to import the said and similar machinery, to produce spring clothespins therewith, and to sell the output thereof.

(6) That the said "group unit" of machinery, including the parts thereof imported in the shipment the subject of this appeal, was manufactured in its entirety by the St. Lawrence Metal & Marine Works of Quebec City, Canada, for, and on order from, the aforesaid Herve Baribeau for the sum of $10,000, Canadian currency, exclusive of packing costs.

(7) That on or about the date of exportation and at all times material herein the Canadian dollar and the United States dollar were of equal value.

(8) That the said Herve Baribeau furnished to the said St. Lawrence company, without charge, certain patterns for castings for use in connection with the manufacture of the machinery; and that the original cost of the said patterns to Herve Baribeau was $300, Canadian currency.

(9) That the sum of $10,000, Canadian currency, referred to in finding No. 6, paid by Herve Baribeau to the St. Lawrence company for manufacturing the machinery, included (a) the cost to the said St. Lawrence Works of materials, labor, and all other manufacturing costs as of the time prescribed by section 402 (f) (1), Tariff Act of 1930, plus (b) its usual general expenses (not less than 10 per centum

of such costs), and plus (c) its profit of not less than 8 per centum of the sum of such costs and general expenses.

(10) That on or about the date of exportation and at all other times material herein, the said St. Lawrence company was the only manufacturer in Canada of such or similar machinery, that it manufactured such and similar machinery only for, and on order from, Herve Baribeau, and that at such times Herve Baribeau was the only seller in Canada of such or similar machinery.

(11) That on or about the date of exportation and at all other times material herein, machinery such as or similar to the instant merchandise was not freely offered for sale in Canada either for home consumption therein or for export to the United States, nor was it freely offered for sale in the United States.

(12) That the unit prices appearing on the invoice for the shipment the subject of this appeal, represent, in each case, the proportionate share of the purchase price of $10,000, United States currency, referred to in finding No. 3, attributable to each part of the aforesaid "group unit" of machinery included in said shipment.

As matter of law, I conclude:

(1) That there is no foreign, export, or United States value for the merchandise herein, as those terms are defined in section 402 of the Tariff Act of 1930.

(2) That cost of production, as that value is defined in section 402 (f), Tariff Act of 1930, is the proper basis for determining the value of the instant merchandise.

(3) That the St. Lawrence Metal & Marine Works, the actual manufacturer of the "group unit" of machinery, including the parts thereof, the subject of this appeal, is the manufacturer within the meaning of that term as used in section 402 (f) (4), Tariff Act of 1930.

(4) That the statutory cost of production for each item on the invoice herein is represented by the invoice unit price, plus its proportionate share of the $300, the cost of the patterns, plus packing costs.

Judgment will be entered accordingly.