(A. R. D. 44)

UNITED STATES *v.* PACIFIC CUSTOMS BROKERAGE CO.
FOR MUNISING WOOD PRODUCTS CO., INC.

Entry No. P 230.

Third Division, Appellate Term

(Decided June 14, 1954)

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.
*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the appellee.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This is an application for review of a decision and judgment of the trial court, Lawrence, J., holding that cost of production, as that value is defined in section 402 (f), Tariff Act of 1930 (19 U. S. C. § 1402 (f)), was the proper basis for determining the value of certain machines and parts imported from Canada and that such value was the invoice unit price of each item, plus its proportionate share of the cost of certain patterns, plus packing costs. *Pacific Customs Brokerage Co. for Munising Wood Products Co., Inc.* v. *United States*, 30 Cust. Ct. 547, Reap. Dec. 8218.

It is conceded that cost of production is the proper basis of valuation, the only question being whether a license fee of $20,000 and royalties in the amount of $30,000 should be included as part of said cost.

Cost of production is defined in the tariff act as follows:

SEC. 402.  VALUE

\*         \*         \*         \*         \*         \*         \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The case was submitted upon a stipulation of facts, to which are attached a copy of the contract of purchase of the merchandise (plaintiff's exhibit 1) and an affidavit of Joseph F. Robineau, president of Munising Wood Products Co., Inc. (plaintiff's exhibit 2). The facts may be summarized as follows:

The importation involved herein is one of six shipments of various items composing a single complete group unit of machinery for the fabrication of spring clothespins. Appraisement of the items in the other five shipments has been withheld, pending a decision in the instant case, in accordance with the provisions of section 14.3 (g), Customs Regulations of 1943.

The complete group unit of machinery was purchased by Munising Wood Products Co., Inc., from Herve Baribeau, owner of the patent, pursuant to a contract which provided, among other things, that the buyer should pay to the seller the sum of $10,000 upon the signing of the agreement, "which sum shall constitute the entire purchase price of the group unit." In addition, the buyer was required to pay, 15 days after the arrival of the machinery, the sum of $20,000, "in consideration of the license to use the patent rights described in this agreement," and, subsequently, a further sum of $30,000 as royalties, said amount to be paid in monthly installments based upon the number of spring clothespins sold by the buyer during the preceding month. The agreement also provided that the seller, during the period in which he received royalties, plus 1 year thereafter, or for a total period of 6 years, whichever period should be greater, should not sell or license

the use of any similar machines to anyone in the United States, its territories, or possessions, nor sell any spring clothespins in the United States, its territories, or possessions. Should the seller, nevertheless, license the use of such machinery in the United States, its territories, or possessions during that period, the buyer's obligation to pay royalties would cease, and the seller would be required to pay the sum of $15,000 as liquidated damages. The buyer was given the right to manufacture and sell spring clothespins in the United States, its territories, or possessions, but not for export. An option was given to the buyer to extend the exclusive license for 5 more years on payment of further royalties. The seller also agreed to sell additional machinery to the buyer at the actual cost to the seller.

The machinery was manufactured by the St. Lawrence Metal & Marine Works, Inc. (hereinafter called the St. Lawrence company), for the seller, on order from him, for which he paid the sum of $10,000, Canadian currency (packing costs not included). Said sum included the manufacturing costs of the St. Lawrence company, its usual general expenses (not less than 10 per centum of said costs), and its profit (not less than 8 per centum of the total expenses). It did not include, however, the cost of certain patterns for castings, which the seller had furnished the St. Lawrence company without charge, the original cost of which was $300, Canadian currency.

At all times material herein, machinery such as or similar to or of the same class or kind as the said group unit was manufactured in Canada only by the St. Lawrence company and only on specific orders from Herve Baribeau, who was the only seller of such or similar machinery in Canada.

The items of the group unit in the importation before us were invoiced at prices, in United States currency, representing their proportionate share of the $10,000 which the purchaser paid on the signing of the agreement. They were entered at the same number of dollars in Canadian currency (the Canadian dollar and the United States dollar being at par at the times material herein), plus 10 per centum, plus 8 per centum, plus packing. However, the appraiser considered Herve Baribeau to be the manufacturer of the merchandise and appraised the same at a value which included the invoice unit prices, in Canadian currency, plus 10 per centum for the usual general expenses of said Herve Baribeau, plus an addition for profit equal to the proportionate share of the $20,000 license fee and the $30,000 royalties attributable to the imported items, plus packing costs.

The importer contends and the trial court held that the St. Lawrence company, and not Herve Baribeau, was the manufacturer of the machinery, within the meaning of that term, as used in section 402 (f), *supra*, and that neither the $20,000 license fee nor the $30,000 royalties constituted a part of the purchase price and that neither was an

element of the statutory cost of production of the merchandise. The proportionate share of the cost of the patterns for castings was added to the invoice unit prices by the trial court.

The Government (appellant herein) claims that Herve Baribeau was the manufacturer of the machines through his contractor, the St. Lawrence company; that his general expenses and profit were part of the cost of production; that either the license fee of $20,000 and the royalties of $30,000, or, in the alternative, the statutory 10 per centum and 8 per centum for his general expenses and profit, respectively, should be included as part of the cost of production of the merchandise.

In support of its contention, appellant points out that Herve Baribeau was the owner of the patents to the machinery and, therefore, controlled its manufacture and disposition; that payment for the machines was made to him and not to the St. Lawrence company; and that he owned the patterns for certain castings which were used in the manufacture of the machines and were furnished by him free of charge to the St. Lawrence company.

The appellant relies primarily upon *Lionel Trading Co., Inc.* v. *United States*, 24 C. C. P. A. (Customs) 432, T. D. 48900. The question in that case was whether an item of 28 per centum should be added to the cost of production of certain empty perfume bottles and empty paper boxes. The item represented, according to the importer:

* * * a profit to cover the purchases of the imported merchandise and for permission on the part of the importer to have the sole use in the United States of the name "Corday" and to cover the permission to use the special designs in packing, etc., of perfumes and toilet articles which had through advertisements secured a world wide reputation.

The bottles and boxes were produced by various French manufacturers for the seller Corday. Corday furnished the designs, which it owned, and also the molds used in making the bottles. The merchandise was produced for the exclusive use of Corday and could not be disposed of by the various manufacturers. On these facts, the court held that the item of 28 per centum was a part of the cost of production, stating (p. 435):

* * * The record shows that the 28 per centum was added by Corday as profit and overhead. It seems obvious that a part of the cost of production of the bottles was in the making, producing, and furnishing the designs and moulds, and that a part of the cost of producing the boxes was the cost connected with the designs. These items clearly go into the cost of production of the merchandise under consideration. * * *

      *        *        *        *        *        *        *

* * * If there is any part of the 28 per centum which should not have been added (and we do not intimate that there is), the proof in the record does not show the amount of the same in relation to the whole 28 per centum.

The court found further that the merchandise was manufactured or produced by Corday within the meaning of section 402 (f).

Accordingly, in the instant case, the cost of the patterns must be included in the cost of production of the merchandise.[1] See also *Ford Motor Company* v. *United States*, 29 Cust. Ct. 553, A. R. D. 9; *Ravenna Mosaics (Inc.)* v. *United States*, 49 Treas. Dec. 699, T. D. 41503.

However, the amounts paid for the license fee and for royalties are separate items in the case before us and clearly do not form part of the actual cost of making the merchandise. On this phase of the case, *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 39 C. C. P. A. (Customs) 86, C. A. D. 468, is controlling. There, certain printing machines, purchased by the Transkrit Corp. of New York from a Swiss firm which owned the patents, were manufactured and shipped by a German corporation. The purchaser remitted to the German company the sum of 22,000 RM per machine, of which the sum of 10,000 RM per machine was transmitted to the Swiss concern. The latter amount was in payment for certain exclusive territorial rights to purchase and operate the machines. The Government contended that the Swiss concern and not the German one was the manufacturer of the merchandise and that the price paid for the territorial rights was a part of the statutory cost of production. The court held (p. 90):

> We conclude that there is substantial evidence of record to establish that the machines in issue were manufactured by the German corporation hereinbefore described and that the cost of production of each involved machine was 12,000 RM and that the license fee in issue was paid in consideration of the exclusive right to purchase the involved machines for export to the United States. Hence the license fee is not an element which may be properly added in computing the dutiable value of the merchandise on the basis of cost of production. [Citing cases.]

The facts in the instant case are analogous. The payments of $20,000 and $30,000 were for the exclusive rights to purchase such machines and to sell spring clothespins manufactured therewith in the United States, its territories, and possessions for a period of 6 years, with an option to extend such rights for another 5 years. Additional machines might be purchased at the actual cost to the seller. If the seller violated the agreement by granting a license to others, he would no longer be entitled to royalty payments and would have to pay damages. The exclusive territorial rights given were a major part of the transaction, for which the sums of $20,000 and $30,000 were paid. These amounts were not a part of the purchase price of the machinery *per se* nor the cost of production thereof.

---

[1] Such addition does not change any other items making up the cost of production, since it was agreed that if the expense of the patterns be added to the cost of materials and labor, the usual general expenses and profit of the St. Lawrence company would still be not less than 10 per centum and 8 per centum, respectively.

See also *United States* v. *F. B. Vandegrift & Co. et al., Kimble Glass Co.,* 26 C. C. P. A. (Customs) 360, C. A. D. 42, holding that a license fee for the exclusive right to purchase machines for export to the United States and for the exclusive right to manufacture and sell such machines in the United States and Canada was not a part of the cost of production; and *United States* v. *Tide Water Oil Co.,* 19 C. C. P. A. (Customs) 392, T. D. 45554, holding that a sum paid to the seller of an oil-refining plant for the right to use a patented chemical process of refining distillates of petroleum was not a part of the purchase price of the plant.

In our view, therefore, neither the license fee of $20,000 nor the royalties of $30,000 are a part of the cost of production of the imported machinery under the formula contained in section 402 (f), *supra.*

We are also in agreement with the learned trial court that the St. Lawrence company, and not Herve Baribeau, is the manufacturer or producer of the merchandise within the meaning of said section. As in the *Hensel* case, the seller had nothing to do with the manufacturing process; he owned the patents and transmitted orders for the machines to the producer. That does not make him the manufacturer of the merchandise. Nor does the fact that he owned certain patterns used in its production. As already stated, the cost of the patterns is a part of the statutory cost of production, but their owner is not necessarily the manufacturer. Cf. *Ford Motor Company* v. *United States, supra,* where the pattern equipment was owned by the importer, and *Ravenna Mosaics (Inc.)* v. *United States, supra,* where the plans and sketches were furnished by the importer.

Accordingly, we find as facts:

(1) That the importation in controversy consists of machines and parts imported from Canada for use in this country in the manufacture of spring clothespins.

(2) That said machines constitute parts of a group unit of machinery purchased under an agreement, dated November 28, 1947, by Munising Wood Products Co., Inc., of Chicago, Ill., the importer herein, from Herve Baribeau of Levis, Quebec, Canada, the owner of the patent rights.

(3) That the agreed purchase price of said group unit of machinery was $10,000, United States currency, exclusive of packing costs.

(4) That in addition to the purchase price, the buyer agreed to pay to the seller the further sums of $20,000 as a license fee, and $30,000, payable over a period of approximately 6 years, as royalties.

(5) That the said sums of $20,000 and $30,000 did not constitute a part of the purchase price of the machinery but were payments in consideration for the seller, as patentee, granting to the buyer the

exclusive right in the United States, its territories, and possessions, to import the said and similar machinery, to produce spring clothespins therewith, and to sell the output thereof.

(6) That the said group unit of machinery, including the parts thereof, imported in the shipment the subject of this review, was manufactured in its entirety by the St. Lawrence & Metal & Marine Works, Inc., for, and on order from, the said Herve Baribeau for the sum of $10,000, Canadian currency, exclusive of packing costs.

(7) That on or about the date of exportation and at all times material herein the Canadian dollar and the United States dollar were of equal value.

(8) That the said Herve Baribeau furnished to the said St. Lawrence company, without charge, certain patterns for castings for use in connection with the manufacture of the machines, and that the original cost of the said patterns was $300, Canadian currency.

(9) That the sum of $10,000, Canadian currency, referred to in finding No. 6, paid by Herve Baribeau to the St. Lawrence company for manufacturing the machinery, included (a) the cost to the said St. Lawrence company of materials, labor, and all other manufacturing costs as of the time prescribed by section 402 (f) (1), Tariff Act of 1930, plus (b) its usual general expenses (not less than 10 per centum of such costs), and plus (c) its profit of not less than 8 per centum of the sum of such costs and general expenses.

(10) That on or about the date of exportation and at all other times material herein, the said St. Lawrence company was the only manufacturer in Canada of such or similar machinery; that it manufactured such and similar machinery only for, and on order from, Herve Baribeau; and that at such times Herve Baribeau was the only seller in Canada of such or similar machinery.

(11) That on or about the date of exportation and at all other times material herein, machinery such as or similar to the instant merchandise was not freely offered for sale in Canada either for home consumption therein or for export to the United States, nor was it freely offered for sale in the United States.

(12) That the unit prices appearing on the invoice for the shipment the subject of this review, represent, in each case, the proportionate share of the purchase price of $10,000, United States currency, referred to in finding No. 3, attributable to each part of the aforesaid group unit of machinery included in said shipment.

We conclude as matters of law:

(1) That there is no foreign, export, or United States value for the merchandise herein, as those terms are defined in section 402 of the Tariff Act of 1930, as amended.

(2)   That cost of production, as that value is defined in section 402 (f), Tariff Act of 1930, is the proper basis for determining the value of the instant merchandise.

(3)   That the St. Lawrence company, the actual manufacturer of the group unit of machinery, including the parts thereof, the subject of this case, is the manufacturer within the meaning of that term as used in section 402 (f) (4), Tariff Act of 1930.

(4)   That the statutory cost of production for each item on the invoice herein is represented by the invoice unit price, plus its proportionate share of the $300, the cost of the patterns, plus packing costs.

The decision and judgment of the trial court are affirmed, and judgment will be rendered accordingly.