(R.D. 11536)

BBR Prestressed Tanks, Inc. ⎱ v. United States
Frank P. Dow, Inc., of L. A. ⎰

Entry No. 61589.

(Decided June 3, 1968)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Arthur E. Schwimmer*, trial attorney), for the defendant.

Watson, Judge: This is an appeal for reappraisement of certain merchandise invoiced as "1 complete Tank Prestressing Machine BBRV, Type BW 2000/1961" exported on March 4, 1962, from Zurich, Switzerland.

The merchandise was invoiced and entered at an f.o.b. price of $12,215. It was appraised at the invoiced and entered value, plus the additional sum of $11,065 which was paid to the manufacturer as a license fee. The only item here in dispute is the amount of $11,065.

It was stipulated between counsel for the parties that the merchandise is not on the Final List promulgated under the Customs Simplification Act of 1956 and that the proper basis of appraisement is export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended. It is further stipulated that if the court holds that the item of $11,065 was properly included in the export value, the appraised value should be affirmed, but that if the said item is held not

to be included in the export value, then the invoiced and entered value should be sustained. (R. 3.)

Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, provides:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiffs' sole witness was Mr. Maximiliaan J. Dykmans, with a degree in civil engineering, who stated that he has been president of BBR Prestressed Tanks since its formation in December 1961. The primary business of BBR Prestressed Tanks is the wrapping or prestressing of water tanks with wire which is accomplished by a special machine. The record discloses that the witness had specialized training in prestressed concrete since 1952 with the Preload Company, which had a patent which was to expire in March 1962, for machines to prestress concrete tanks. It further appears that plaintiffs' witness wanted to start his own company in the prestressed concrete tank field and, accordingly, sought a license from the Swiss concern that had competed with Preload Company overseas. (R. 5.) The license agreement (plaintiffs' exhibit 1) was negotiated by Mr. Dykmans with a Dr. Doanides, resident of Athens, Greece, who had sometimes done some work for BBR Prestressed Tanks in the Middle East and Greece (R. 8, 13), but the actual purchase of the machine involved herein was made from Proceq, S. A., who sells this equipment. (R. 9.) As appears in the license agreement (plaintiffs' exhibit 1), there was a requirement that a lump sum of $11,065 was to be paid when each "BBRV" tank winding machine was purchased. Plaintiffs' witness testified that he paid this sum to Proceq, S. A., when the particular machine was purchased. (R. 12.)

On cross-examination, Mr. Dykmans confirmed that he paid the sum of $11,065 to Proceq, S.A. (R. 14–15, R. 19). He further stated that a Mr. Brandestini, one of the parties to the license agreement (plaintiffs' exhibit 1), is the owner of Proceq, S.A. (R. 15.) It appears that the name "BBR" is an amalgam of the first initials of the last names of three of the four engineers referred to in plaintiffs' exhibit 1, among them being Mr. Brandestini. (R. 15–16.)

The invoice for the payment of the $11,065 here in issue was received in evidence as defendant's exhibit A. (R. 18–19.) This invoice for the stated sum is on BBR's letterhead and is signed by Mr. Brandestini, heretofore referred to.

The value found by the appraiser is presumed to be the value of the involved merchandise, and the burden rests upon the appealing party who challenges its correctness to prove otherwise. Further, it must be presumed that the appraiser found every fact to exist that was necessary to sustain his appraisement. *White Lamb Finlay, Inc.* v. *United States*, 29 CCPA 199, C.A.D. 192; *Mary G. Ricks et al.* v. *United States*, 29 Cust. Ct. 517, Reap. Dec. 8187. Specifically, in the case at bar, there is a presumption that the disputed item of $11,065 was part of the price of the imported merchandise.

Our appellate court has held in effect that whether a payment made by an importer is part of the purchase price of imported merchandise is a question of fact to be determined by the court and, further, that the designation of such payment in commercial invoices or other contractual agreements as something other than "price" is not controlling. *Erb & Gray Scientific, Inc.* v. *United States*, 53 CCPA 46, C.A.D. 875.

In the *Erb & Gray* case, *supra*, the merchandise consisted of an "Hitachi" electron microscope which was entered at a value of $13,500 and appraised at a value of $17,000, which included a sum of $3,500, designated on the commercial invoice as "New York Office Service and Operation Fee". The importer therein claimed that the said sum of $3,500 was not properly a part of the export value of the microscope and that the correct export value was the entered value, in which connection the importer contended that the $3,500 payment was always separate and distinct from the purchase price payment and was not made to purchase or acquire possession of the involved instrument. While the court in the *Erb & Gray* case, *supra*, recognized that the payment of $3,500 in question was an "additional charge, above and beyond the seller's price at which it offered the instruments," it pointed out, however, that there was substantial evidence to support a determination that the contested sum was included by the manufacturer seller in pricing the involved microscope and that payment of such amount "was not contractually optional." The court therein held that the so-called fee "constituted in essence a disguised increase in the price" of the importation, and that, accordingly, the $3,500 item, as part of the purchase arrangement, was properly included in the export value of the merchandise.

In my opinion, the situation in the case at bar is comparable to that which prevailed in the *Erb & Gray* case, *supra*. Here, as in the cited case, the parties agreed that export value was the proper basis of appraisement and limited the dispute to the inclusion in the appraised

value of a single item, the so-called license fee in the amount of $11,065. While the License Agreement (plaintiffs' exhibit 1) states that this so-called fee was "in compensation of the license granted by BBR", that characterization in the agreement is not determinative of the question whether said sum was for appraisement purposes part of the value of the merchandise. The significant fact, in my opinion, is that the License Agreement obligated the importer in this case to purchase these special machines from American BBR, or Proceq, S.A. (article 4, paragraph (6)), and that the $11,065 payment in question was contingent solely upon the purchase of each machine. (Article 4, paragraphs (3), (4).) In paragraph 3 of said article 4, it is stated that the "Firm" (plaintiff herein) "undertakes to pay a lumpsum royalty of $11,065 (* * *) with each BBRV tank winding machine it is purchasing." In my opinion, the $11,065 payment was mandatory and was so linked with the purchase of the machine that, despite its characterization otherwise, it may properly be deemed a disguised addition to the price of the machine.

It further appears that, although the License Agreement stated explicitly that the amount under consideration was to be paid to "BBR" (article 4, paragraph (4)), plaintiffs' witness testified that he purchased the machine from Proceq, S.A. (R. 9), that he personally wrote the check for same and made it payable to Proceq, S.A. (R. 18–19), and that he sent it to Proceq, S.A. (R. 15). There is no evidence in this case that anyone other than the seller, Proceq, S.A., ever received or profited from the payment of the $11,065 here involved. Inasmuch as the sum of $11,065, as well as the so-called "invoice" price of $12,215 was paid to Proceq, S.A., the seller, it is unnecessary to pierce the corporate set-up of the seller and go beyond the facts of record for our determination in this case, except to note in passing that Proceq, S.A., is owned by Mr. Brandestini (R. 15), one of the four civil engineers who were parties to the License Agreement. The legal status of "BBR" is not disclosed by the record in this case, and plaintiffs offered no evidence from the engineers referred to in plaintiffs' exhibit 1 or from Proceq, S.A., to clarify the status of "BBR". In my opinion, the plaintiffs in this case have failed to overcome the presumption that the $11,065 item in question was in fact part of the purchase price of the imported machine and, as such, properly included in the export value of the merchandise. For the reasons above stated, it is deemed unnecessary to discuss the cases cited by the plaintiffs in their brief.

On the basis of the record here presented, and for all of the reasons hereinabove set forth, I find the facts to be:

1. That the merchandise covered by this appeal for reappraisement consists of a tank prestressing machine exported from Switzerland on March 4, 1962.

2. That said merchandise does not appear on the Final List, T.D. 54521, promulgated by the Secretary of the Treasury pursuant to the Customs Simplification Act of 1956, T.D. 54165.

3. That the merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That appraisement of the merchandise was made at the invoice price, packing included, plus $11,065.

5. That the evidence fails to establish that the item of $11,065 was not part of the purchase price of the merchandise.

I, therefore, conclude as to the matters of law:

1. That the plaintiffs have failed to overcome the presumption of correctness attaching to the appraised value.

2. That the proper basis of value for the involved merchandise is export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That said value is the appraised value.

Judgment will be entered accordingly.