(A.R.D. 265)

BBR Prestressed Tanks, Inc.<br>Frank P. Dow Co., Inc., of L.A. } *v.* United States

Entry No. 61589.

Second Division, Appellate Term

(Decided January 8, 1970)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the appellants.

*William D. Ruckelshaus*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the appellee.

FORD, Judge: This case is before us on an application for review of the decision by a single judge set forth in *BBR Prestressed Tanks, Inc., Frank P. Dow, Inc., of L.A.* v. *United States*, 60 Cust. Ct. 885, R.D. 11536 (1968). The merchandise involved is described on the invoice as "1 complete Tank Prestressing Machine BBRV, Type BW 2000/1961," and was exported by the manufacturer, Proceq S.A. of Zurich, Switzerland. It was appraised on the basis of export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. Said export value was set at the invoice and entered value of $12,215 plus an additional sum of $11,065. The parties have stipulated that export value is the proper basis of valuation.

At the trial before a single judge, appellants contended that the sum of $11,065 was a license fee and did not constitute part of the statutory export value. The court held, however, that appellants had failed to overcome the presumption that the $11,065 in question was part of the purchase price of the imported merchandise and hence properly included in the export value.

In support of its contention at the single judge trial, appellant offered the testimony of one witness and two documentary exhibits. The witness was Mr. Maximiliaan J. Dykmans who testified that he had been the president of BBR Prestressed Tanks since its formation in December, 1961. The thrust of his testimony was that the payment of $11,065 required when he purchased the importation in question was a license fee paid to an entity known as BBR, whose composition and status was not completely clarified. It appears however that BBR was composed of various parties in control of the patents embodied in the importation. A copy of the license agreement relating to the payment of the sum in question was introduced in evidence as plaintiff's exhibit 1. It is dated January 3, 1962, and was made between the appellant, BBR Prestressed Tanks, Inc. and Messrs. Birkenmaier, Brandestini Ros, Vogt and American BBR, Inc., the representative of BBR, Zurich. The license agreement requires that BBR Prestressed Tanks, Inc. pay the sum of $11,065 with each BBRV tank winding machine purchased. Payment was to be made to BBR, Zurich and machines were to be purchased from American BBR or Proceq S.A.

After reviewing the arguments and the evidence presented, the trial judge held that appellants had failed to overcome the presumption that the sum in question was part of the purchase price of the imported merchandise and hence, properly included in the export value.

The trial judge based his conclusion on findings that the payment

of $11,065 was so intimately linked with the purchase of each machine that despite its characterization as a license fee it was in reality a disguised addition to the price of the machine. Furthermore, the trial judge considered it significant that the sum in question was actually paid to Proceq S.A., the manufacturer, and not to BBR, Zurich, as was required by the license agreement. On this point, the trial court noted as follows:

> It further appears that, although the License Agreement stated explicitly that the amount under consideration was to be paid to "BBR" (article 4, paragraph (4)), plaintiffs' witness testified that he purchased the machine from Proceq, S.A. (R.9), that he personally wrote the check for same and made it payable to Proceq, S.A. (R.18–19), and that he sent it to Proceq, S.A. (R.15). There is no evidence in this case that anyone other than the seller, Proceq, S.A. ever received or profited from the payment of the $11,065 here involved. * * *

The trial court found that the situation herein was comparable to that in *Erb & Gray Scientific, Inc.* v. *United States*, 53 CCPA 46, C.A.D. 875 (1966), wherein the court held that a sum of $3,500 characterized as "New York Office Service and Operation Fee" was in reality a disguised increase in price.

The arguments on appeal all center on the question of whether the trial court properly concluded that the payment of $11,065 was part of the purchase price of the machine in question. This in turn raises issues regarding the authenticity of payments made by the importer which are claimed to be for matters other than the merchandise itself and is intimately related to both the burden of proof placed on the appellant in such matters and the role of the trial judge in weighing and evaluating evidence placed before him.

Appellants suggest that the holding of the lower court does violence to the cases that hold that royalty fees or licensing fees which are paid for the exclusive territorial rights in connection with the use of such machine are not part of the purchase price of that machine or part of the dutiable value. See for example, *United States* v. *F. B. Vandegrift & Co. et al.*, 26 CCPA 360, C.A.D. 48 (1939). We do not think that this is the case since nowhere does the trial judge question the possibility that certain legitimate license fees such as those paid for exclusive territorial rights may not constitute part of the purchase price. We note that the cases of *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 39 CCPA 86, C.A.D. 468 (1951); *United States* v. *F.P. Dow, Inc., of Los Angeles, a/c Olympic Plastics Co., Inc.*, 54 Cust. Ct. 751, A.R.D. 180 (1965); and *United States* v. *Pacific Customs Brokerage Co. for Munising Wood Products Co., Inc.*, 32 Cust. Ct. 675, A.R.D. 44 (1954), cited by appellant in support of the above prin-

ciple are all cases in which the basis for appraisement was cost of production. The exclusion of a license fee from cost of production is fundamentally different from its exclusion from export value since the former is a much narrower concept than the latter. Hence, no conclusion regarding the treatment of license fees in an export value situation can be based on what is done in a cost of production situation.

Contrary to appellants' assertions, the trial court did not base its opinion on a finding of law which lumped license fees and export value together. Rather, the thrust of the court's opinion was to question the authenticity of the license agreement and suggest that the so-called license fee was in reality a disguised portion of the price. It based this opinion on certain evidence regarding the fee which it felt cast doubt on its legitimacy; first, the intimate association of the fee with each machine purchased and second, the payment of the fee to the seller and not to the party called for by the license agreement.

The parties have devoted considerable attention to the matter of the $11,065 being payable in connection with each and every importation. Appellants suggest that it is no reflection on the genuineness of the license fee that it must be paid in connection with each machine purchased. Appellee, on the other hand, contends that a sum which the importer is contractually obligated to pay in connection with the importation which is intimately related to the use of the importation and concerning which purchasers have no option, must be included in the price of the merchandise and hence in the export value.

We are of the opinion, after reviewing the evidence, that appellee's contention is the correct one and that the trial judge correctly pointed out that the linking of the so-called license fee to the sale of each machine was so constituted as to be properly considered part of the purchase price. On this question, we consider *Erb & Gray Scientific, Inc.* v. *United States*, *supra*, to be in point. There, as here, the parties had stipulated that export value was the proper basis of appraisement and the so-called royalty fee was not optional.

When the so-called royalty fee is paid for each machine and such compulsory payment is made to the seller and not the patent holder, the identity of the fee to the price is stronger than its relationship to the exclusive territory within which the purchaser may practice the BBR method of constructing prestressed tanks.

Underlying all this analysis and particularly the conclusions drawn from the testimony of appellants' witness is the principle that the court is the final arbiter of whether a payment is part of the purchase price of imported merchandise. In this case, we began with the presumption that the disputed item was part of the price and with the presumption that the appraiser found every fact that was necessary to support his

appraisement. Appellants attempted to overcome this presumption by isolating the disputed fee as a sum unrelated to price and unconnected with the importers obtaining dominion over the importation.

The trial judge in the proper exercise of his powers and in the evaluation of the testimony and evidence placed before him found that the sum in question was, despite its characterization as a royalty fee, in reality a part of the purchase price. We consider his reasoning correct and we agree with the conclusions he reached regarding the relation of the so-called royalty and the purchase price.

In light of the above, we affirm the decision of the trial judge.

The court therefore makes the following findings of fact:

1. The merchandise covered by this appeal for reappraisement consists of a tank prestressing machine exported from Switzerland on March 4, 1962.

2. The merchandise does not appear on the final list, T.D. 54521, promulgated by the Secretary of the Treasury pursuant to the Customs Simplification Act of 1956, T.D. 54165.

3. The merchandise was appraised on the basis of export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. Appraisement of the importation was made at the invoice price, packing included, plus $11,065.

5. The evidence fails to establish that the item of $11,065 was not part of the purchase price of the merchandise.

We therefore conclude as matters of law:

1. Appellants have failed to overcome the presumption of correctness attaching to the appraised value.

2. The proper basis of value for the involved merchandise is export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. Said value is the appraised value.

Judgment will be entered accordingly.

---

(A.R.D. 266)

W. J. BYRNES & CO. OF N.Y., INC.
PANATION TRADE CO.

*v.* UNITED STATES