(C.D. 4402)

CASAVANT FRERES, LTD. *v.* UNITED STATES

Entry Nos. 160870, 165005, and 166345.

(Decided January 23, 1973)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Harlington Wood, Jr.*, Assistant Attorney General (*Jordan J. Fiske*, trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise of these consolidated actions consists of two complete pipe organs in knocked-down condition and

the major parts of a third pipe organ in such knocked-down condition which were manufactured by the plaintiff in St. Hyacinthe, Canada; imported into the United States by truck through the port of Detroit, Michigan, and appraised at varying amounts. Plaintiff pleads two causes of action in its complaint. In its first cause of action plaintiff alleges that the proper basis for determining the dutiable value and the resulting value of the involved organs and parts is constructed value as defined in 19 U.S.C.A., section 1401a(d) (section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at amounts differing from and lower than the appraised values to the extent of certain installation costs and freight-to-destination charges said to be included in the appraised values.

Under its second cause of action plaintiff contends for the same unit values it sought under its first cause of action, but in accordance with the export value basis as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), provided, however, *that constructed value is not the proper basis for determining the value of the involved merchandise*. Under this cause of action the defendant has admitted in its answer that the subject merchandise was appraised on the basis of *export value*.

At the trial, plaintiff abandoned its claim of constructed value. Evidence presented by the plaintiff at the trial under its claim of export value disclosed that the involved organs and parts were constructed pursuant to written contracts which were negotiated by plaintiff with religious institutions in the United States. The record shows that in all of these contracts the prices included installation expenses, transportation charges to the construction site, and customs duties. Eugene Laplante, plaintiff's secretary, testified on direct examination that the plaintiff is engaged in the business of designing, constructing, and installing custom-built pipe organs for clients who are mostly churches and institutions of learning (R.12–13). He testified (R.13–14):

Q. Will you tell us what procedures are followed by your company in obtaining orders or in making sales of pipe organs?—A. Yes. Usually, we get a letter of inquiry from a church or institution asking us to provide information on our product. And we send out literature on the Casavant organ and offer our services for designing an instrument which would be appropriate for their situation. From then on very often we have local representatives who serve as agents between our company and the client.

Q. Do your clients sign contracts before you proceed any further with the work?—A. Yes.

Q. At what stage are contracts signed?—A. When the most important details have been established we prepare a contract for the purchaser's signature.

On cross-examination the witness testified that he prepared the contracts in the three cases before the court. And in the case of the organ involved in Court No. R70/8253 the sale came about as a result of contact made by an architect who approached the plaintiff asking it to design an instrument which would be adequate for a building about to be erected (R. 37). The witness also testified (R. 40–41):

Q. During the period of importation of these three organs were all organs sold by Casavant Freres to the United States importers sold with an installation mandatory in the contract?—A. Yes.

Q. And it was also mandatory for the purchaser to pay for this installation?—A. It was.

Q. Again, Mr. Laplante, if you would refer to the three contracts here, they call for Casavant to deliver these organs to the buyer in the United States?—A. Yes; they do.

Q. Does the contract bind the purchaser to pay for the cost of that transportation?—A. Yes; it does.

Q. And this particular facet of the contract, was this a part of all contracts made between Casavant and the United States purchasers at the time of exportation?—A. Yes.

The testimony of plaintiff's witness, Jean-Guy Roy, who is plaintiff's comptroller, detailed the actual costs of installation and transportation which were charged against each of the three importations involved in this case.

It is the plaintiff's contention in this action that the installation and freight charges are not properly part of dutiable export value because, as plaintiff's witness Laplante put it, "when the installation is carried out the organ has already been constructed" (R. 35), and "then it is delivered, so the freight cannot be part of the construction cost." (R. 36.) And defendant contends in substance that plaintiff has failed to prove the correct dutiable value of the merchandise.

The court agrees with the defendant's contention. During the relevant period pipe organs manufactured by the plaintiff for exportation to the United States were never sold or offered for sale, f.o.b. St. Hyacinthe, Canada, the principal market, notwithstanding the fact that the involved invoices give an f.o.b. St. Hyacinthe price breakdown. Organs of plaintiff's manufacture are "custom" built and installed. As the reappraising court said on essentially the same facts in *Canadian Pipe Organ Company* v. *United States* (Bd. of G. A.), Reappraisement Circular No. 35932 (1925):

The evidence shows that pipe organs are never sold excepting at a delivered and installed price, and that their cost installed varies according to the location of the town, the kind of materials, decoration, and location necessary to make it harmonize with the architecture of the church. It is clear, then, that so far as the evidence in this case is concerned there is no such thing as a market price for what might be called detached pipe organs.

In the *Canadian Pipe Organ* case the court concluded that there was no foreign, export or United States values for the pipe organs, in consequence of which, the court determined their value according to the cost of production formula of the 1922 Tariff Act from the evidence in the record.

Similarly, in the case at bar this court must conclude from the uncontroverted evidence presented in this record that export and United States values for the involved pipe organs and parts were non-existent during the pertinent times. The unique character of the organs as marketed by plaintiff with their installation inextricably tied up with their sale simply precludes ascertainment of uniform prices or values for an organ of plaintiff's manufacture. *BBR Prestressed Tanks, Inc., Frank P. Dow Co., Inc., of L.A.* v. *United States*, 64 Cust. Ct. 787, A.R.D. 265 (1970).

Although plaintiff formally abandoned its causes of action for determination of the value of the subject merchandise under the constructed value formula, it undertook to negate the existence of statutory constructed value as a basis in connection with its proof of an export value for the subject merchandise. And since plaintiff has failed to establish export value and has abandoned its claim of constructed value in this case, the court is obliged to let the appraised values stand for want of a claim supported by evidence of a statutory value. See and compare *Millmaster International, Inc., et al.* v. *United States*, 57 CCPA 108, 109–110, C.A.D. 987 (1970), 427 F.2d 811.

Therefore, on the record before me, I find as facts:

1. That the merchandise herein consists of "custom" built pipe organs and parts thereof manufactured in and exported from St. Hyacinthe, Canada, by Casavant Freres, Ltd. between February 10th and March 8th, 1970, ready for delivery to and installation upon the purchasers' properties in various parts of the United States.

2. That said merchandise is not on the final list promulgated by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521.

3. That said merchandise was appraised upon entry on the basis of export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at various values.

4. That at the time of exportation of said merchandise such and similar merchandise for exportation to the United States was only sold or offered for sale in accordance with the specifications and requirements of the particular purchaser or prospective purchaser at a price which included the cost of installation, transportation charges to the place of installation, and United States customs duties.

Upon these facts, I find as matters of law:

1. That there is no export value or United States value for the merchandise herein.

2. That plaintiff has not established a statutory value for the said merchandise.

3. That the appraised values remain in full force and effect herein by reason of plaintiff's failure to discharge its burden of proof.

Judgment will be entered herein accordingly.