**TIKAL DISTRIBUTING CORP.,** Plaintiff,

v.

**The UNITED STATES,** Defendant.

**Slip Op. 97–86.**

**Court No. 95–11–01415.**

United States Court of International Trade.

July 2, 1997.

Peter S. Herrick, counsel, Miami, FL, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; Barbara M. Epstein, New York City, Civil Division, Dept. of Justice, Commercial Litigation Branch, of counsel, for Defendant.

## OPINION

POGUE, Judge.

Plaintiff, Tikal Distributing Corp. (Tikal), an importer of leather shoes, brings this action to recover moneys tendered to the United States Customs Service (Customs).

## BACKGROUND

By letter dated December 20, 1991, Tikal voluntarily disclosed to Customs that second invoices or "notes" to Tikal from its supplier had accompanied its commercial invoices dating from June 1982. Unlike the commercial invoices, the "notes" were not filed with entries of the merchandise. The second invoices included charges for exclusive selling rights and other charges, which Tikal referred to as "addition[s] to dutiable value." (Letter of Peter S. Herrick, Dec. 20, 1991 (Def.'s Ex. B) [hereinafter Disclosure Letter] at 5). Tikal now asserts that neither the exclusive rights payments, which ranged over time from 1% to 20% of the value of the imported merchandise, or the "addition[s] to dutiable value" are dutiable. (Complaint at ¶¶ 45–47 ("The 'notes' issued by the supplier included amounts for the 'rights' and for financial services.... The payments for financial services are not dutiable.... The

payments for 'exclusive rights of sale' are not dutiable. . . .")).

Included with Tikal's disclosure letter was a payment of $25,273.00, which represented duties on the money paid other than the exclusive rights payments. Disclosure Letter at 9. In the letter Tikal "reserve[d] the right to seek the refund of these duties if appropriate," and said that "if necessary this letter may be considered a protest. . . ." *Id.* at 6. By its own terms, the letter was a "prior disclosure" filed pursuant to 19 U.S.C. § 1592(c)(4) (1988).[1] On all entries filed subsequent to the Disclosure Letter, Plaintiff submitted the "notes" to Customs with the entry papers, but Tikal did not pay duties on the amounts charged in these second invoices. (Compl. at ¶ 8).

After receiving the letter, Customs instituted an investigation of the second invoicing. In September 1994, as a result of the investigation, Customs requested payment, pursuant to 19 U.S.C. § 1592(d) (1988)[2] of an additional $72,426.41, which represented duties on the exclusive right to sell payments for entries made from October 1, 1989 to December 20, 1991. Customs also requested payment for all duties owed on entries filed after the 1991 disclosure for exclusive rights payments and any other undervaluations, and stated that "[a]ll new entries filed with Customs . . . must include in the entered value additions for dutiable 'exclusive selling rights payments' (proceeds) and any other missing additions to value." (Letter from U.S. Customs Service to Tikal, Sept. 18, 1994 (Pl.'s Ex. A)).

On Nov. 3, 1994, Tikal sent Customs $56,185.92 in duties for additional payments made by Tikal to its supplier from 1991 to 1994. Again, Tikal excluded from the money paid to Customs duties on all exclusive rights payments. (Letter from Peter S. Herrick to U.S. Customs Service, Nov. 3, 1994 (Def.'s Ex. C)). Tikal contended that the exclusive rights payments were non-dutiable, and reserved the right to file a protest for the return of all or part of its payment to Customs. *Id.* at 8.

Tikal met with a Customs representative on November 22, 1994 to discuss the dutiability of the exclusive rights payments. At that meeting, according to a letter sent by Tikal's counsel to Customs on December 2, 1994, Customs calculated that Tikal owed a total of $131,240.74 in duties on the exclusive rights payments made to its supplier. Tikal proposed to pay the money at the rate of $5,000 per month. (Letter from Peter S. Herrick to U.S. Customs Service, Dec. 2, 1994) (Pl.'s Ex. C). The first $5,000 payment was included with the letter, as was an additional $4,182.93, representing the duties owed on additional non-exclusive rights payments made on entries of September and October, 1994. *Id.* The letter also informed Customs that "[s]ince Customs has taken the position that all of the note payments are dutiable, Tikal will be protesting this decision."

Plaintiff made entries of merchandise on July 27, 1994; Dec. 5, 1994; Dec. 20, 1994; and Feb. 14, 1995. All four entries were liquidated between April and July, 1995. Plaintiff filed a protest for each liquidation. It is these protests that are the subject of this action. On each of its protests, Plaintiff wrote:

> Protest is made of the Customs decision to make payments from the importer to Cal-

---

1. 19 U.S.C. § 1592(c)(4) (1988) provides:

   **Prior disclosure**
   If the person concerned discloses the circumstances of a violation . . . before, or without knowledge of, the commencement of a formal investigation of such violation, with respect to such violation, merchandise shall not be seized and any monetary penalty to be assessed . . . shall not exceed . . . the interest . . . on the amount of lawful duties of which the United States is or may be deprived so long as such person tenders the unpaid amount of the lawful duties at the time of disclosure or within 30 days . . . after notice by the appropriate customs officer of his calculation of such unpaid amount.

2. Under 19 U.S.C. § 1592(d) (1988), "[I]f the United States has been deprived of lawful duties as a result of subsection (a) of this section, the appropriate customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed." Subsection (a) forbids any person, "by fraud, gross negligence, or negligence," from entering any merchandise "into the Commerce of the United States," through any document, oral statement or act which is material and false, or any omission which is material. 19 U.S.C. § 1592(a)(1988).

zado Coban to be dutiable as the proceeds of resale under 19 U.S.C. § 1401a(b)(1)(E). The importer seeks the refund of the duty payment of $25,273.00 made to Customs on December 20, 1991. The importer seeks the refund of the duty payment of $56,-185.92 paid to Customs on November 3, 1994. The importer seeks the refund of all of the $5,000.00 in additional duty payments required by Customs to be paid by the importer. The importer protests the inclusion of "exclusive selling rights payments" in the entered values for all entries filed subsequent to December 20, 1994. (Def.'s Ex. D). According to Customs, no duties were charged on the exclusive rights payments for the four entries in this action. (Def.'s Mot. Dismiss Failure State Claim and Lack of Jurisdiction at 4). "With respect to the four entries covered by this action, the liquidated dutiable value was only based on the price set forth on the commercial invoices,...." *Id.* at 4–5. Furthermore, Customs claims, "Customs has not applied any part of Tikal's voluntary tender payments to entries in this action; ...." *Id.* at 6 (citation omitted). For that reason Customs argues the case should be dismissed for failure to state a claim on which relief may be granted.

Tikal argues that this Court has jurisdiction under 28 U.S.C. § 1581(a)(1988), which gives the Court jurisdiction over actions contesting the denial of a protest. Tikal argues the entries covered by Tikal's protests were the first entries liquidated after Customs' response to Tikal's disclosure. "Not knowing to which entries Customs was to credit the payments, Tikal protested the first entries that were liquidated." (Pl.'s Opp'n. to Def.'s Mot. to Dismiss at 4).

Tikal also argues, in the alternative, that if the Court finds that the additional duties were not applied to the protested entries, then its letters of December 20, 1991 and December 2, 1994 should be considered protests of Customs' refusal to refund the moneys tendered by Tikal and that the Court has jurisdiction over these protests pursuant to 28 U.S.C. § 1581(a) or (i)(2) & (4). *Id.* at 5.

Finally, Tikal argues that if the Court does not have jurisdiction under § 1581(a) or (i),

then the Court should transfer the case to the Federal Claims Court, pursuant to 28 U.S.C. § 1631 and § 1491. *Id.* at 5–6.

## DISCUSSION

### I. THE FOUR PROTESTED ENTRIES

Customs has provided the Court with a declaration by Jay Baltuch, an Import Specialist at the Port of Miami, Florida who reviewed the protests involved in this court action. In his declaration, Baltuch swears that the appraisement and liquidation of the four entries was based on the invoice prices and did not include any value additions by Customs for the exclusive right to sell, and that the Plaintiff's prior tenders do not relate to these entries. Mr. Baltuch's declaration is supported by Customs' entry forms which show that the appraisement of Tikal's entries was based on the value of the merchandise as reported by Tikal.

Tikal has not provided the Court with any evidence to rebut either Mr. Baltuch's statement or the information on the entry forms. "If allegations of jurisdictional facts by the party who seeks the exercise of jurisdiction in his favor are challenged by his adversary in any appropriate manner, he must support them by competent proof." *Schering Corp. v. United States,* 67 C.C.P.A. 83, 88, 626 F.2d 162, 167 (1980) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). In other words, it is the party seeking jurisdiction who has "the burden of showing that he is properly in court." *McNutt,* 298 U.S. at 189, 56 S.Ct. at 785. Plaintiff has failed to meet this burden. Therefore, the Court must conclude that Customs did not charge duties on Plaintiff's exclusive rights payments for these four entries, and with regard to these entries, Plaintiff has failed to state a claim upon which relief may be granted.

### II. PLAINTIFF'S DECEMBER 20, 1991 PAYMENT

Plaintiff argues that this Court has juris-

diction pursuant to 28 U.S.C. § 1581(a) [3] over its claim for a refund of the $25,273 it sent to Customs on December 20, 1991. Plaintiff asserts that the letters sent to Customs on December 20, 1991 and December 2, 1994 constituted protests of Customs' decision not to refund the money and that section 1581(a) gives this court jurisdiction over Customs' denial of those protests. The Court does not agree.

Section 1581(a) provides no jurisdiction for protests outside of the exclusive categories listed in 19 U.S.C. § 1514(a). *See Mitsubishi Elec. Am., Inc. v. United States,* 44 F.3d 973, 976 (Fed.Cir.1994). The decisions subject to protest under section 1514(a) include inter alia:

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury; . . . .

■ The refusal to refund a voluntary tender is not a charge or exaction under 19 U.S.C. § 1514(a)(3), nor does such a decision fall into any of the other categories of protest listed in section 1514. *See, e.g. Carlingswitch, Inc. v. United States,* 85 Cust.Ct. 63, 500 F.Supp. 223 (1980), *aff'd* 68 C.C.P.A. 49, C.A.D. 1264, 651 F.2d 768 (1981) [*Carlingswitch I*]. In *Carlingswitch I,* the plaintiff voluntarily tendered $91,992.35 to Customs on its own initiative in order to limit its potential penalty liability. Subsequently, Customs demanded payment of $7,926,778 from plaintiff as forfeiture value on the basis of plaintiff's undervaluation of its merchandise, false freight figures and failure to report true constructed value figures. In response, plaintiff filed a petition for remission or mitigation of the claim. Eighteen months later, Customs notified plaintiff that the statute of limitations had run on all entries and

that the forfeiture claim was remitted in its entirety.

Plaintiff then requested a refund of its initial deposit. The request was denied. Plaintiff filed a protest against the denial which was also denied. When plaintiff filed suit, the court held that Customs' refusal to refund money voluntarily tendered "without legal obligation or compulsion," could not constitute an "exaction" under 19 U.S.C. § 1514(a)(3) and that Customs' refusal to refund the money was not a protestable decision. *See* 85 Cust.Ct. at 66, 500 F.Supp. at 227. For that reason, the court decided it did not have jurisdiction over plaintiff's claim. *See id.* at 66–67, 500 F.Supp. at 227.

Similarly, the money tendered by Tikal in 1991 was tendered voluntarily by Plaintiff "on its own initiative and without request or demand by Customs." *Id.* at 65, 500 F.Supp. at 226. More specifically, the money was filed pursuant to the requirements of 19 U.S.C. § 1592(c)(4) in order to limit Tikal's potential penalty liability. *See* Disclosure Letter at 6 ("In this disclosure we are paying additional duties. . . . We are doing this as an act of good faith and because of the statutory requirements of a voluntary disclosure.") "[T]o constitute an 'exaction' under section 514(a)(3), there would have had to have been some compulsion on the part of Customs requiring plaintiff to have paid the monies." *Carlingswitch I,* 85 Cust.Ct. at 66, 500 F.Supp. at 227.

Plaintiff tendered money to ·Customs to qualify for voluntary disclosure treatment and limit its potential penalty liability. Tikal did so without any legal obligation or compulsion. Customs' refusal to refund that money is not a protestable decision. Absent a valid protest, this Court does not have jurisdiction pursuant to 28 U.S.C. § 1581(a).[4]

■ also argues that if the Court does not have jurisdiction under section

---

**3.** 28 U.S.C. § 1581(a) provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."

**4.** In *Pentax Corp. v. Robison,* 924 F.Supp. 193 (CIT 1996), *appeal docketed,* No. 96–1320 (Fed.

Cir. April 23, 1996), the court found it had jurisdiction over "all issues relating to 'prior disclosure.'" 924 F.Supp. at 196. However, that was in the context of an action consolidated with an enforcement action brought by the government to collect a penalty assessment.

1581(a), then it must have jurisdiction under 28 U.S.C. § 1581(i)(1988).[5] The Court does not agree. In *Carlingswitch, Inc. v. United States,* CIT 70, 560 F.Supp. 46 (1983) [*Carlingswitch II* ], the plaintiff from *Carlingswitch I* again sought to recover money it had tendered voluntarily during a penalty investigation. The facts were identical to those in *Carlingswitch I.* The plaintiff argued that § 1581(i) could be used "to fashion a cause of action in the absence of a statute expressly conferring one on plaintiff." Citing *Montgomery Ward & Co. v. Zenith Radio Corp.,* 69 C.C.P.A. 96, 673 F.2d 1254 (1982), the court rejected plaintiff's argument: "[N]ew causes of action cannot be created under 28 U.S.C. § 1581(i)." 5 CIT at 72, 560 F.Supp. at 48.

This Court does not have jurisdiction over Plaintiff's claim for a refund of the moneys tendered in December, 1991 under 28 U.S.C. § 1581(a) or (i). Therefore, with respect to this money, Plaintiff's claim must be dismissed. This result is consistent with the structure of the statutory scheme governing Customs' penalty actions. Section 1592 gives Customs the authority to impose penalties upon any person who enters merchandise into the United States "by fraud, gross negligence, or negligence ..." 19 U.S.C § 1592(a)(1). That section also contains the voluntary disclosure provision which allows a person to disclose the circumstances of a violation of subsection (a) "before, or without knowledge of, the commencement of a formal investigation ..." and thereby limit any potential penalty liability. 19 U.S.C. § 1592(c)(4). Judicial review of Customs' actions under section 1592 is provided for in 28

U.S.C. § 1582, which gives the Court of International Trade "exclusive jurisdiction of any civil action ... *which is commenced by the United States* ... to recover a civil penalty under [19 U.S.C. § 1592] ..." (emphasis added). There is no provision for importer-initiated suits arising out of section 1592. Even without such a provision, the statute does provide a complete judicial remedy for those who believe that Customs has wrongfully assessed a penalty. Specifically, the statute allows a party to obtain de novo review of a government claim from the Court of International Trade before paying any penalty. *See* 19 U.S.C. § 1592(e) ("Notwithstanding any other provision of law, in any proceeding commenced *by the United States* in the Court of International Trade for the recovery of any monetary penalty claimed under this section—(1) all issues, including the amount of the penalty, shall be tried de novo; ...") (emphasis added).

Finally, Plaintiff argues that if this Court decides that it does not have jurisdiction over this case, then it should transfer the case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631, which provides that if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed...." It is not apparent to the Court, however, based on the record, that any other court would have jurisdiction over this cause of action.

Plaintiff contends that the U.S. Court of Federal Claims has jurisdiction pursuant to 28 U.S.C. § 1491[6] (Tucker Act) "because it is

---

**5.** 28 U.S.C. § 1581(i) provides:
(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section ... the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section ...

**6.** 28 U.S.C. § 1491 provides:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

a civil action; against the United States; ... and, founded upon an Act of Congress—section 1592 of the Tariff Act of 1930." (Pl.'s Opp'n Def.'s Mot. Dismiss Failure State Claim and Lack Jurisdiction at 6).

In support of its position, Plaintiff cites *Trayco, Inc. v. United States,* 994 F.2d 832 (Fed.Cir.1993). In *Trayco,* the Court of Appeals for the Federal Circuit held that a district court had properly exercised jurisdiction over an importer's suit for the refund of penalties pursuant to 28 U.S.C. § 1346(a)(2) (Little Tucker Act).[7]  *Id.* at 837. The court stated:

> Meeting the jurisdictional requirements of section 1346(a)(2) ... is not enough for Trayco to succeed in having its case heard in federal district court. "[T]he Tucker Act ... is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.... [T]he Act merely confers jurisdiction ... whenever [a] substantive right exists." ... Thus, Trayco must assert a "substantive right enforceable against the United States for money damages."

*Id.* (quoting *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). The *Trayco* court then held that "[t]he refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages." *Id.* (citing *Eastport Steamship Corp. v. United States,* 372 F.2d 1002, 178 Ct.Cl. 599, 605 (1967)).[8]

■ This Court declines to extend *Trayco* by finding that the jurisdiction of the district courts also includes suits for the refund of duties voluntarily tendered to avoid the imposition of penalties. As the Supreme Court stated in *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983):

> Not every claim invoking the Constitution, a federal statute, or a regulation is cogni-

zable under the Tucker Act. The claim must be one for money damages against the United States, ... and the claimant must demonstrate that the source of substantive law he relies upon "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."

463 U.S. at 216, 103 S.Ct. at 2967–2968 (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954) (other citations omitted). Plaintiff has failed to demonstrate that 19 U.S.C. § 1592 or any other statutory provision mandates compensation for damages resulting from a voluntary tender such as the one made by Plaintiff in this case.

Plaintiff also cites *United States v. Biehl & Co.,* 3 CIT 158, 539 F.Supp. 1218 (1982), for the proposition that if a gap exists in this Court's jurisdiction that gap must be addressed by another court. In *Biehl,* however, the government was attempting to recover tonnage duties upon the entry of a vessel. District courts had jurisdiction over such claims prior to the enactment of 28 U.S.C. § 1582 in 1980. The government, the plaintiff in *Biehl,* argued that section 1582 had transferred jurisdiction to the Court of International Trade. The Court, noting that tonnage duties are "separate and distinct" from duties on imported merchandise, found that jurisdiction continued to rest in the district court. *See* 3 CIT at 160, 539 F.Supp. at 1220. The *Biehl* court did not hold that in every action improperly brought in the Court of International Trade, a "gap" in jurisdiction exists, which requires transfer to another court. The difference between *Biehl* and the case now before the Court is that the *Biehl* court found that a cause of action existed, albeit outside the jurisdiction of the Court of International Trade because it did not involve import duties.

---

7. 28 U.S.C. § 1346 provides:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal claims, of:

...

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution,

or any Act of Congress, or any regulation of an executive department,....

8. For a discussion of the interplay between *Trayco* and the Court of International Trade's residual jurisdiction under 28 U.S.C. § 1581(i), see Patrick C. Reed, *The Role of Federal Courts in U.S. Customs & International Trade Law,* 195–98 (Oceana Publications, Inc.1997).

The present case *does* involve import duties. Therefore, it is similar to *Pentax Corp. v. Myhra*, 72 F.3d 708 (9th Cir.1995) (amending 61 F.3d 731 (9th Cir.1995)). In *Pentax,* the 9th Circuit upheld a determination of the District Court that it did not have jurisdiction over an action contesting Customs' determination that plaintiff must pay certain duties in order to qualify for prior disclosure status and avoid the imposition of a penalty. Because Pentax sought to avoid paying a duty, the Court said the action was within the exclusive jurisdiction of the CIT under section 1581. The court added, "[w]e express no opinion on ... whether the CIT would have had original jurisdiction if Pentax had originally filed its complaint in that court." *Id.* at 709.

Based on the authority cited above, the Court does not believe that a district court or the Court of Claims would have jurisdiction over Tikal's cause of action. Therefore the Court will dismiss Tikal's cause of action with respect to the money tendered on December 20, 1991.

### III. MONIES PAID AFTER SEPT. 1994

A portion of the monies paid by Plaintiff after receiving Customs' letter of September 1994, and after meeting with Customs representatives, is distinguishable from Tikal's initial tender. Tikal made its voluntary disclosure on Dec. 20, 1991. Any money tendered by Tikal that pertains to merchandise entered prior to that date should be considered to have been voluntarily tendered pursuant to section 1592(c)(4). For the reasons stated above, this Court does not have jurisdiction over Customs' refusal to refund such money.[9]

On the other hand, the merchandise entered after plaintiff's voluntary disclosure cannot be considered to be the subject of that disclosure. Therefore, any duties paid on such merchandise would not be considered a voluntary tender. Plaintiff informed Customs of all payments made to its supplier for merchandise entered after the disclosure letter, and paid estimated duties upon entry. Customs has now decided that additional duties are owed on these entries. Such a decision is protestable under 19 U.S.C. § 1514(a)(5), which permits the protest of "all orders and findings ... as to ... the liquidation or reliquidation of an entry, or any modification thereof; :..."

Plaintiff's letters of November 3 and December 2, 1994 may be considered pro-

---

**9.** If Tikal disagreed with Customs' determination regarding duties owed on the exclusive rights payments made before the Prior Disclosure, it could have refused to pay the additional money requested by Customs, and foregone "prior disclosure" treatment. At that point, Customs may have assessed a penalty. *See* Letter from U.S. Customs Service to Jose M. Gutierrez, Sept. 18, 1994 ("[A]n omission resulting in substantial losses of revenue to U.S. Customs constitutes violations of 19 USC 1592(a)(1)(A)(i) and (ii)"). If Tikal believed the penalty was assessed in error, it could have refused to pay and Customs would have commenced an enforcement action in the Court of International Trade pursuant to 28 U.S.C. § 1582 thus providing Tikal with the judicial review it now seeks. *See* 19 U.S.C. § 1592(e).

This result does not implicate the Constitutional due process issue raised "when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation...." *See Ex parte Young,* 209 U.S. 123, 147, 28 S.Ct. 441, 449, 52 L.Ed. 714 (1908). The penalties in *Young* were far more serious than those at issue in this case. Specifically, an act of disobedience was punishable by a fine not exceeding $5,000 or impris-

onment not exceeding five years, or both. An act was defined to mean a single ticket sale. By disobeying the statute, therefore, the railroad companies would rapidly have incurred millions of dollars in potential penalties and the possibility of many years in prison for their employees.

Furthermore, in *St. Louis, Iron Mountain & S. Ry. Co. v. Williams,* 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139 (1919), the court, citing *Ex parte Young,* said that "the imposition of severe penalties as a means of enforcing a rate, ... is in contravention of due process of law, [only] where no adequate opportunity is afforded the [plaintiff] for safely testing, in an appropriate judicial proceeding, the validity of the rate ... before any liability for the penalties attaches." *Id.* at 64–65, 40 S.Ct. at 72.

Tikal had such an opportunity when it made the entries that were the subject of the voluntary disclosure. Had Tikal included the "notes" with its entries, Customs could have decided at that time whether the notes payments were dutiable. If Tikal disagreed with Customs' decision it could have filed a protest and initiated an action in this court if that protest were denied, with no risk of incurring a penalty. The fact that Tikal failed to avail itself of this opportunity does not render the statutory scheme constitutionally infirm.

tests of Customs' decision. Under *Mattel, Inc. v. United States,* 72 Cust.Ct. 257, 260, 377 F.Supp. 955, 958–59 (1974):

> While no formal rules have been devised for the manner in which such objections should be expressed, the court has held letters to be sufficient as protests where they conveyed to the customs officials the objection in the mind of the protesting party so that the former would have an opportunity to review their decision and take action accordingly.

72 Cust.Ct. at 260, 377 F.Supp. at 958–59.

> [T]he court, taking a liberal posture, has held that, however cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of section 514 if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought.

*Id.* at 262, 377 F.Supp. at 960.[10]

This Court has jurisdiction under 28 U.S.C. § 1581(a) of a civil action commenced to contest the denial of a protest, in whole or in part. Such an action must be commenced within 180 days after the date of mailing of a notice of denial. *See* 28 U.S.C. § 2636(a) (1988). Under 19 U.S.C. § 1515(a) (1988), Customs is to review a protest and allow or deny it in whole or in part, within two years. Notice of the denial "shall be mailed in the form and manner prescribed by the Secretary. Such notice shall include a statement of the reasons for the denial, as well as a statement informing the protesting party of his right to file a civil action. . . ." *Id.*

Although more than two years have passed since Plaintiff's protest letters were sent to Customs, Customs has yet to respond in writing to those letters.

Customs' failure to reply to a protest within the two-year time limit might constitute a denial of that protest. The plaintiff would be deemed to have exhausted administrative remedies and the court would exercise jurisdiction.[11] In this case, however, Tikal's summons was made just one year after its protests were sent. Thus, the Court did not have jurisdiction at the time Plaintiff initiated this action because the protest had not then been denied. Furthermore, Customs may not have realized that Tikal's letters were to be treated as protests. It is appropriate to afford Customs the opportunity to respond to Plaintiff's protests.

The Court will therefore dismiss this cause of action without prejudice. Plaintiff may request expedited consideration of its protest under 19 U.S.C. § 1515(b). If Customs fails to respond to such a request within 30 days, the protest would be deemed denied according to the terms of the statute and the Court would have jurisdiction under 28 U.S.C. § 1581(a).

## CONCLUSION

The court concludes that with respect to the four entries at issue, Plaintiff has failed to state a claim upon which relief may be granted. With respect to the money ten-

---

**10.** The letter of Dec. 20, 1991, however, cannot reasonably be considered a protest. At the time the letter was sent, there was no Customs decision to protest. Under the statute "[a] protest of a decision, order, or finding . . . shall be filed with such customs officer within ninety days after *but not before*—(A) notice of liquidation or reliquidation, or (B) . . . the date of the decision as to which protest is made." 19 U.S.C. § 1514(c)(2) (1988) (emphasis added).

**11.** This two-year time limit does not start the 180–day statute of limitation against the individual seeking to contest the denial of such a protest. In *Knickerbocker Liquors Corp. v. United States,* 78 Cust.Ct. 192, 432 F.Supp. 1347 (1977), plaintiff filed a protest on April 26, 1972. Customs mailed a notice of denial on November 1, 1974, and plaintiff filed a summons on November 7, 1974. *Id.* at 193, 432 F.Supp. at 1349.

Customs argued that the action should be dismissed because "the failure of a customs official to either allow or deny a protest within a period of two years . . . constitutes a constructive denial thereof, causing the 180–day time limitation to automatically begin running. . . ." By the time the summons was filed, Customs argued, a total period of 196 days had elapsed from the end of the two-year period. The Court refused to dismiss the action, finding that the two-year time limit had been enacted to benefit importers, not Customs. "The specific obligation is imposed thereby on Customs to mail a notice of denial to a protestant. This section does not serve as a statute of limitation with respect to the commencement of an action, but only provides for the act or occurrence from which the 180–day time limitation . . . begins to run." *Id.* at 194, 432 F.Supp. at 1349.

dered on December 20, 1991, the court concludes that neither this court nor the Court of Federal Claims has jurisdiction over a claim for refund of moneys paid voluntarily to qualify for prior disclosure treatment pursuant to 19 U.S.C. § 1592(c)(4). Therefore, Plaintiff's claims with respect to the $25,273 tendered on Dec. 20, 1991, and any duties paid on merchandise entered prior to Plaintiff's voluntary disclosure, are dismissed.

Finally, Plaintiff's letters of November 3, and December 2, 1994 are to be considered valid protests of Customs' determination that Plaintiff owes additional duties on merchandise entered subsequent to December 20, 1991. At the time Plaintiff initiated this cause of action Customs had not yet denied Plaintiff's protests in whole or in part, so Plaintiff could not have been considered to have exhausted its administrative remedies. The Court will dismiss all claims relating to duties paid on these entries as well.

## JUDGMENT

This matter having come before the court for decision; and the court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that defendant's motion to dismiss is granted; and it is further

**ORDERED** that the action be, and hereby is, dismissed with prejudice with respect to duties paid on merchandise entered on or before December 20, 1991 and dismissed without prejudice with respect to duties paid on merchandise entered after December 20, 1991.