**SLIP OP. 00-24**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**JAMES L. WATSON, SENIOR JUDGE**

———————————————————X

**TIKAL DISTRIBUTING CORP.,**        :

            **Plaintiff,**        :

                        :        **COURT NO. 96-11-02580**

**UNITED STATES,**                :

            **Defendant.**        :

———————————————————X

[Plaintiff's motion for summary judgment denied; defendant's motions for summary judgment and dismissal granted. Defendant's counterclaim dismissed.]

Decided: February 28, 2000

Peter S. Herrick, Esq., for plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara M. Epstein); Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of Counsel, for defendant.

**OPINION AND ORDER**

**WATSON, SENIOR JUDGE:**

**I.**

**INTRODUCTION**

Plaintiff, Tikal Distributing Corp. ("Tikal"), a footwear importer and distributor, challenges the

appraised values of the imported merchandise by the U.S. Customs Service covering seventy-seven

entries of footwear at the port of Miami, Florida during the period of December 1994 through March

1996. The exporter/ seller of the merchandise was Fabrica de Calzado Corban ("Corban"), located in

Guatemala. Except for several entries, addressed infra, [1] Customs appraised the merchandise on the

basis of transaction value, as defined in 19 U.S.C.

§ 1401a(b), at the invoice values plus certain additional "note" payments Tikal made to Coban for

exclusive distribution rights in the United States and Canada ("additional" or "exclusivity" payments).

These additional "note" payments were previously involved in Tikal Distributing Corp. v. United States,

970 F. Supp. 1056 (CIT 1997), but presented other issues. This action, except as to certain entries

discussed below, falls within the court's jurisdiction under 28 U.S.C. § 1581(a), and is subject to de

novo review pursuant to 28 U.S.C. § 2640(a)(1).

Currently before the court are cross-motions for summary judgment pursuant to CIT Rule 56.

There is no dispute that transaction value is the proper basis for appraisement of the merchandise, and

the only issue is whether Customs properly included the  "exclusivity payments" in the dutiable

transaction value of the merchandise.

**II.**

**UNDISPUTED FACTS**

The parties agree, and the court concurs,  there is no genuine issue as to any material fact and

the case may be disposed of by summary judgment. The material undisputed facts are as follows:

---

[1] Entry Nos. 577-126772-8, 577-1263036-7, 577-123441-0, 577-1264423-6. Also, by counterclaim, defendant alleges that in Entry No. 577-1262888-2 the additional payment was erroneously  deducted from the invoice prices and defendant seeks to recover an underpayment of duty. That entry and counterclaim is discussed infra.

Since 1982, and at all times relevant to this case, Corban sold and exported  its footwear to Tikal under a written distributorship agreement granting Tikal exclusive distribution rights to sell Coban's shoes in the United States and Canada.  In addition to the invoice prices for the footwear, Tikal made separate additional "note" payments to Coban for its exclusivity rights.[2]  Commencing in September 1994, Customs required that Tikal include in the entered value of the footwear the additional exclusive selling rights payments.[3]

Shortly thereafter, on October 20, 1994, and in furtherance of the exclusive distributorship arrangement in effect, Coban instituted a "new method of pricing" of its exports to Coban in which in addition to invoiced prices for the footwear,  Tikal would be required to pay Coban 5 percent of Tikal's retail sales for its exclusive selling rights based upon an agreed  formula.  In implementing the "new method of pricing," Coban sent to Tikal with the purchase invoices for footwear  "credit notes" charging  Tikal specific sums for the exclusive selling rights. The credit notes are referenced to the accompanying commercial invoices by number in the entries. Tikal made payments to Coban for both the invoice prices of the footwear and credit notes sent to Tikal for each shipment.

---

[2] In Tikal Distributing Corp. v. United States, 970 F. Supp. 1056, 1057 (CIT 1997), Judge Pogue observed that "[b]y letter dated December 20, 1991, Tikal voluntarily disclosed to Customs that the second invoices or "notes" to Tikal from its supplier had accompanied its commercial invoices dating from 1982. Unlike the commercial invoices, the "notes" were not filed with the entries of merchandise. The second invoices included charges for exclusive selling rights and other charges which Tikal referred to as 'addition[s] to dutiable value '."

[3] A letter from Customs to Tikal of September 18, 1994, states that "[a]ll new entries filed with Customs . . . must include in the entered value additions for dutiable 'exclusive selling rights payments' (proceeds) and any other missing additions to value." See Tikal, 970 F. Supp. at 1058.

## III.

## THE ISSUES.

There is no dispute that the proper basis for appraisement is transaction value as defined in 19 U.S.C. § 1401a(b). The legal issues revolve around whether the credit note payments made to Coban, ostensibly  for the exclusive distributorship rights, were properly included by Customs in the dutiable transaction value, as defined in the statute.  Tikal claims that its additional payments are for its exclusive distributorship rights in the U.S. which rights have nothing to do with the exportation and sale of the footwear per se.  Defendant, however, contends, alternatively,  that Customs properly included the exclusivity payments in transaction value, either as the "price actually paid or payable" within the meaning of § 1401a(b)(1), or as a "royalty or license fee" under § 1401a(b)(1)(D), and/or as proceeds of the subsequent resale of the imported merchandise within the meaning of § 1401a(b)(1)(E).

## IV.

## THE "EXCLUSIVITY PAYMENTS"

In determining whether separate or additional payments made by the importer to the exporter are properly part of dutiable transaction value, the court must consider the particular facts and circumstances of the sale and of the additional payments.  While not a critical requirement for inclusion in transaction value, the existence of  a contractual relationship between the exporter and importer inextricably linking the sale of the goods to the importer with additional payments by the latter as a quid pro quo for exclusive distributorship rights on resale provides a very reasonable basis for Customs to find that the additional payments are part of the total price paid for the imported merchandise within the purview of the transaction value statute.

The undisputed facts and circumstances in this case plainly show the genesis of the additional exclusivity payments Tikal made to Coban.  The parties had a long-standing exclusive distributorship agreement covering the footwear. Under the agreement, Coban was obligated to sell and export its footwear to Tikal on an exclusive distributorship basis for U.S. sales, and concomitantly, Tikal was obligated to make the additional note payments. In 1994, Coban instituted a new method of  pricing the footwear by which  Tikal would, in addition to invoice prices for the  footwear, pay Coban five percent of Tikal's selling prices for exclusive distributorship rights. To implement the new method of pricing, "credit notes" were sent to Tikal for payment in addition to the invoiced prices; and such notes accompanied the invoices and were referenced to them. Commencing in 1994, Customs required Tikal to include the additional payments in the entered dutiable value of the footwear.

Under the undisputed facts of this case, the court first addresses the  issue of whether the additional payments are part of the price paid or payable for the exported merchandise within the purview of the transaction value statute. That issue is a question of statutory construction.

The term "price actually paid or payable" is defined in subsection 1401a(b)(4)(A), as the total payment (whether direct or indirect), exclusive of certain costs,  charges or expenses not relevant here, made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller. Additionally, § 1401a(b)(3) lists items identified separately from the price actually paid or payable and from any cost or other item referred to in paragraph (1) expressly excluded from transaction value, but none of the excluded items have any relevance to payments for exclusive distribution rights. However, because the particular additional payments are not expressly excluded, it does not automatically follow that such payments are part of the price actually paid or payable for the imported goods, and thus

includible in transaction value. See Catepillar, Inc. v. United States, 941 F. Supp. 1241, 1244-1248

(CIT 1996).

Plaintiff and defendant view the proper treatment of the additional payments under the

transaction value statute from two different perspectives.  Defendant insists that the additional payments

Tikal was required to pay to Coban for exclusivity rights under the new method of pricing and

distributorship agreement were actually part of the total payment made by the buyer to the seller, and

hence part of the "price actually paid or payable" within the meaning of

§ 1401a(b)(1). Plaintiff, on the other hand, seeks to dissociate the additional payments for exclusive

distributorship rights from the sales and export transactions and the merchandise itself.

The court holds that Customs' position that the additional payments for the exclusivity rights

were an integral part of the total price paid for the merchandise under the transaction value statute is a

reasonable and permissible construction of the statute and additionally is supported by the rationale of

judicial authority.

Particularly in point is  Generra Sportwear Co. v. United States, 905 F.2d 377 (Fed. Cir.

1990).  In Generra,  to obtain an export license in compliance with  Hong Kong's voluntary restraint

agreements with the United States, the exporter had agreed with the importer to pay the cost of

obtaining  quota for the shipment. The exporter then separately billed the quota payment to the

importer. Customs included the quota payments in the transaction value of the merchandise, which

inclusion the imported contested.

The Federal Circuit determined that Customs had properly included the separately invoiced

additional quota payments in transaction value for the following reasons: (1) because

§ 1401a(b) does not precisely address the issue of whether quota payments may be included in transaction value, Customs construction of the statute must be upheld if based on a permissible construction of the statute, citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984) and Federal Election Comm'n v. Democratic Senatorial Campaign Comm., 454 U.'S. 27, 39 (1981); courts normally defer to the agency's construction of the statutory scheme it administers, citing Japan Wahling Ass'n v. American Cetacean Soc'y, 478 U.S. 221, 223 (1986), and Chevron, 467 U.S. at 844; Custom's construction of § 1401a(b) that transaction value may include quota charges is permissible and therefore, the court should give deference to such construction; it was reasonable for Customs  to conclude that the quota charges were part of the "price actually paid or payable," as defined in subsection 1401a(b) (4)(A) as "the total payment . . . made, or to be made, for the imported merchandise by the buyer to, or for the benefit of, the seller"; the term "total payment" is all-inclusive; Customs could reasonably conclude that the entire payment made by the importer was "for imported merchandise" within the meaning of subsection 1401a(b)(4)(A); a permissible construction of the term "for imported merchandise" does not restrict which components of the total payment may be included in transaction value; Congress did not intend for the Customs Service to engage in extensive fact-finding to determine whether separate charges, all resulting in payments to the seller in connection with the purchase of imported merchandise, are for the "merchandise" or for "something else," citing Moss Mfg. Co. v. United States, 896 F.2d 535, 539 (Fed. Cir. 1990) (requiring Customs to engage in formidable fact-finding would frustrate the efficiency of Custom's appraisal procedure).

Continuing, in Generra the Federal Circuit held that  an additional payment made to the seller in

exchange for merchandise sold for export to the United States may be included in transaction value, even if the payment represents something other than the per se value of the goods; whether or not the quota payment was "for imported merchandise" is not a factual issue, but a construction of the statute; the focus of transaction value is the actual transaction between the buyer and the seller; as reflected by the statute itself, which governs the permissible exclusions from transaction value, the latter  encompass items other than the pure cost of the imported  merchandise; if Congress had intended to exclude  quota payments from transaction value, it could have included them among the explicit exclusions enumerated in the statute; and it was not necessary for Customs to find that the quota charge was imposed as a condition of sale before considering it part of the "price actually paid or payable" under subsection 1401a(b)(4)(A).

Significantly, whether or not viewed as "conditions" of the sale, the exclusivity rights and additional payments were purely quid pro quo in the sale and purchase of the footwear and a creature of the reciprocal rights and obligations of  the parties under their long-standing exclusive distribution arrangement and the "new method of pricing" the exports (letter to Tikal from Coban of October 20, 1994). Although it is true that Tikal's exclusive distributorship rights in the United States were exercisable only after importation of the merchandise, nonetheless  all the foregoing circumstances preexisted the exportations and sales to Tikal. Clearly, the additional payments and exclusivity rights themselves pursuant to the preexisting distributorship agreement of the parties  were not  "triggered by events subsequent to importation and without regard to importation," as baldly urged by plaintiff. Plt'f Opp. Brief, at 5.  The undisputed facts simply do not support such assertion.

In short,  the exclusivity rights and additional payments were terms and conditions of the

preexisting distributorship agreement and the "new method for pricing [the] exports." As stressed by

the Federal Circuit in Generra: "As long as the quota payment was made to the seller in exchange for

merchandise sold for export to the United States, the payment may be included in transaction value,

even if the payment represents something other than the per se value of the goods."of the merchandise.

Id. at 380. Cf. BBR Prestressed Tanks, Inc. v. United States, 64 Cust. Ct. 787, A.R.D. 265 (1970),

decided under the previous valuation statutes (export value), citing Erb & Gray Scientific, Inc. v. United

States, 53 CCPA 46, C.A.D. 875 (1966) holding that an "office service and operation fee" was in

realty a disguised increase in price.

It is obvious that when there is a bifurcation of the total payment or an "additional" payment

made by the importer to the seller allegedly to compensate the seller both for conferring specific

contractual rights on the purchaser and for the invoice prices of the goods, Customs must be alert as to

whether such bifurcation or additional payment simply disguises a portion of the total price paid for the

goods as a payment for something else, thus circumventing the transaction value statute.

Although export value and transaction value are defined somewhat differently, nonetheless for

purposes of determining whether an additional payment for ostensibly something other than the

merchandise per se is part of dutiable value, the rationale of the export value cases apply in the current

case. As pointed up in Caterpillar, 941 F. Supp. 1241, 1253 (CIT 1996), "[a]s the legislative history to

the 1979 Trade Agreements Act explains, the transaction value basis of appraisal is substantially

equivalent to the former 'Export Value' basis: 'While transaction value is a different basis of value than

export value, the practical effects in terms of differences in appraised value appear to be minimal',"

citing H.R. Rep. No. 317, 96th Cong., 1st Sess., 91 (1979)' S. Rep. No. 317, 96th Cong. 1st Sess. 119

(1979), reprinted in U.S.C.C.A.N.381, 505.

The court has noted plaintiff's arguments relying upon HQ Ruling 542360 dated June 10, 1981 addressing whether certain "distributorship" or "exclusivity" payments form part of transaction value. The Ruling in question - -  not addressed to Tikal, simply advisory and expressly nonbinding on Customs, and involving different facts and issues than those now before us - - concluded that the item in the transaction value statute related to royalties and license fees was not applicable to "distributorship/exclusivity payments" under the following circumstances: (1) importers of fabric if they so wished could obtain from the exporter exclusive distribution rights by paying the supplier a fixed annual distributorship fee, unrelated to the value or volume of fabric imported or sold; obtaining such exclusivity rights and payments therefor would be an optional feature of the contemplated distributorship arrangement for the importers and not a condition of sale by the exporter, viz.,  sales would be made to the importers whether or not they elected exclusivity rights and to pay additional exclusive distributorship fees.

Given the foregoing factual predicates and other circumstances of the Ruling, which are plainly distinguishable from those in the current case,  plaintiff's alleged reliance on the Ruling as  binding on the court in the current case is frivolous.

Tikal's reliance on Catepillar, Inc. v. United States, 941 F. Supp. 1241 (CIT 1996), appeal dismissed, 111 F.3d 143 (Fed. Cir. 1997), is also misplaced. In Catepillar, Value Added Taxes remitted to a foreign seller, but subsequently refunded by the foreign government to the purchaser (exports are accorded VAT-free treatment) were held to be not properly included in transaction value. Catepillar distinguished the refunded VAT taxes from the quota payment in Generra, primarily on the

basis that in <u>Generra</u> the quota charges were not refunded. Here, too, there were no refunds of the exclusivity payments.

Defendant alternatively argues, and the court concurs, that Customs could reasonably regard Tikal's additional payments as "proceeds of any subsequent resale, disposal, or use of the imported merchandise that accrue, directly or indirectly, to the seller," and therefore, part of dutiable value under 19 U.S.C. § 1401a(b)(1)(E). <u>See</u> 1 Sturm, Customs Laws & Administration, § 47.2 at 25 for discussion of 19 U.S.C. § 1401a(b)(1)(E); 19 C.F.R. § 152.103(h). The additional payments for the exclusive rights of sale were undisputedly based on a sliding scale percentage formula tied directly to Tikal's resales of the merchandise.

Customs' interpretation of the transaction value statute in this case is eminently reasonable and hence, permissible. Given the rationale of <u>Generra</u> deferential to a permissible administrative interpretation of the transaction value statute, 905 F.2d at 379, even if the court were to find plaintiff's interpretation of the transaction value statute in this case also reasonable, Custom's permissible interpretation must be sustained. 5 F. 2d 377, at 379, 381. <u>See also</u> <u>Caterpillar</u>, 941 F. Supp. at 1244 (court will uphold Customs' permissible construction of the statute).

For the foregoing reasons, plaintiff's motion for summary judgment is denied; defendant's motion for a summary judgment is granted.

**V.**

**<u>DEFENDANT'S MOTION FOR SEVERANCE AND DISMISSAL OF THE ACTION WITH RESPECT TO FOUR ENTRIES.</u>**

For four of the entries involved in this case (Nos. 577-1262772-8, 577-1263036-7, 577-

1262441-0, 577-1264423-6) defendant moves for severance and dismissal of the action for lack of

jurisdiction and/or a failure to state a claim upon which relief can be granted. There is no dispute that

this action was untimely filed with respect to two the four entries, Entry Nos. 577-1262772-8 and 577-

1263036-7. In all four entries the merchandise  was appraised and liquidated at the invoice values

alone, <u>viz.</u>, no additions to the invoice values were made. It is apparent that in addition to the action

being untimely filed as to two of the entries in question, plaintiff's complaint in this action that the

additional payments were improperly included in the transaction value appraisements was factually

unsustainable - - indeed,  moot <u>ab</u> <u>initio</u> - - with respect to all four entries since concededly no

additions to invoice values had been made in the appraisements and liquidations. <u>See</u> <u>Tikal</u>, 970 F.

Supp. at 1059 (plaintiff failed to meet its burden to establish jurisdiction with respect to four entries in

which the appraisements and liquidations were based on invoice prices and did not include any value

additions by Customs for the exclusive right to sell). Plaintiff consents to dismissal of the action with

respect to the four entries in question. In view of the dismissal of this action as to all of seventy-seven

entries, however, severance of the four entries is not required.

**VI.**

**<u>DEFENDANT'S COUNTERCLAIM</u>**

In entry No. 577-1262888-2 of October 18, 1995, the Summary Sheet (Customs Form 7501

included in the official record of the civil action) plainly negates inclusion of the additional payment of

$3,903.72 in dutiable value, and therefore, as to the appraisements in the four entries discussed above,

plaintiff had no viable claim against the Government. Both the protest at Customs and this civil action

challenging inclusion of additional payments in dutiable value (that never occurred)  were moot <u>ab</u> <u>initio</u>

as to the particular entry, and as to that entry the court lacks jurisdiction. American Import Co. v.

United States, 4 Cust. Ct. 172, C.D. 316 (1940). See also Tikal Distributing Corp., 970 F. Supp. at

1059 (additional payments were not included in dutiable value).

In point of fact, in Entry No. 577-1262888-2  the additional payment was erroneously

deducted from the invoice price resulting in a dutiable value below invoice price. Defendant has

interposed a counterclaim pursuant to 28 U.S.C. § 2643 and CIT Rules 8(a) and 13(a) contesting

Customs' erroneous appraisement of the merchandise, moves for summary judgment  for recovery of

an alleged underpayment of duty in the sum of  $ 390.37, plus interest, and remand to Customs for

reliquidation of the entry.  Plaintiff neither responded to the counterclaim nor opposed defendant's

motion for summary judgment with respect to the entry in question. Nonetheless, the court is

constrained to dismiss the counterclaim for lack of jurisdiction.

Pursuant to 28 U.S.C. § 1583, the court has jurisdiction over counterclaims if it involves the

imported merchandise that is the subject of the civil action before the court. However, since

defendant's counterclaim is addressed only to a single entry, the court must have jurisdiction over the

imported merchandise that is the subject of the particular entry and counterclaim. If, however,

jurisdiction in the civil action is lacking with respect to the particular entry and imported merchandise

that is the subject of the counterclaim,  the latter does not confer an independent jurisdictional  basis on

the court to adjudicate the rights of defendant with respect to that imported merchandise in that entry.

Defendant agrees that this civil action should be dismissed as to the entries in which  additional

payments were never included in the appraisements and plaintiff never had a viable claim.

Fundamentally, as to Entry No. 577-1262888-2, wherein the additional payment was deducted from

the invoice prices, plaintiff never had a viable claim against the Government and as to that entry, the civil

action before the court was moot <u>ab initio</u>, and the court lacks jurisdiction.[4]  Accordingly, there being

no jurisdiction with respect to the entry and merchandise that is the subject of the counterclaim, both the

civil action and defendant's counterclaim with respect to Entry No. 577-1262888-2  must be

dismissed for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, a final judgment will be entered in conformity with this opinion.

Dated: New York, New York
      February 28, 2000

_____
James L. Watson, Senior Judge

---

[4] The legislative history of proposed § 1583 shows that counterclaim jurisdiction was conferred on the court to remedy the situation in existing law where if the court found Customs' appraisement incorrect, the court could not sustain an appraised value claimed by the Government than was different from that claimed by the plaintiff (<u>i.e.</u>, higher than that claimed by plaintiff or even the original appraised value), and could only dismiss the action without requiring the plaintiff to pay any additional duties. Under § 1583, the court would have jurisdiction to enter a judgment against plaintiff for additional customs duties if the counterclaim involves the imported merchandise that is the subject matter of the civil action. <u>See</u> H.R. Rep. No. 96-1235, 96th Cong., 2d Sess., p. 49 (Aug. 20, 1980). However, there is no suggestion by either the language of § 1583 or its legislative history that jurisdiction over a counterclaim to collect a greater sum of  duties than that claimed by plaintiff or provided by the original liquidation of the entry is independent of whether the liquidation of a particular entry became final and conclusive or whether the court has jurisdiction of the civil action involving the particular entry and imported merchandise. <u>See</u> 19 U.S.C. § 1514(a).

Although limited, Customs has independent remedies to reliquidate entries, <u>see</u> 19 U.S.C. § 1501 covering voluntary reliquidations, and recover duty assessments, <u>see</u> 28 U.S.C.§ 1582 (3) providing the court jurisdiction over civil actions commenced by the United States.